LILLIAN HARPER, as Administratrix of the Estate of JUNE HARPER, Deceased, Respondent, v. ROGER PARKER et al., Appellants.

First Department, February 28, 1961.

*Wm. D. Van Pelt* for Selma Parker, appellant.

*Seymour L. Colin* of counsel (*Jacob A. Millstein,* attorney), for respondent.

*Per Curiam.* Defendants, mother and son, appeal from a judgment upon a verdict for the plaintiff in a death action. Upon the trial, a jury found that the defendant Roger Parker negligently caused the death of plaintiff's intestate, June Harper, and that his negligence was imputable to his mother. Judgment was entered against both defendants for the sum of $17,500, plus interest and costs.

The events leading to the death of June Harper in the early morning hours of February 5, 1955, as they appear from the plaintiff's proof, were as follows: During the preceding evening, defendant Roger Parker, Katie May Sealy, John Almond and the decedent were at the Parker home, where they remained until midnight or shortly thereafter. All were, at the time, between 16 and 18 years of age. Plaintiff, who was the mother of the deceased June Harper, testified that defendant Selma Parker later admitted to her that she had instructed her son Roger late in the evening to "take the keys and take the children home." The four youngsters left the house and walked to a garage, where an automobile owned by defendant Selma Parker was parked. After leaving one of the garage doors slightly ajar, Roger, with the others, climbed into the car, Roger and the decedent in front, and the other couple in the rear. Roger started the engine to "keep it warm" but did not drive out of the garage. Soon they all fell asleep, and, after an indeterminate time, Roger awoke, feeling sick. He awakened the others but was unable to arouse June Harper. After taking

Katie May Sealy to her home, Roger and John Almond proceeded to a hospital with June, and there she was found to be dead of carbon monoxide poisoning.

Although there was disagreement and doubt among the defense witnesses as to whether it was defendant Selma Parker or her husband who instructed Roger to take his companions home, none of them testified that any direction or authority was given to Roger to use his mother's automobile. Roger claimed that on the way to the garage, some two and one-half blocks from the Parker home, he told the others they would not go out in the car. He testified that he propped open one of the garage doors approximately 12 or 15 inches using a heavy wire braced on the car's rear bumper and that he and Katie May Sealy climbed into the back seat while John Almond and the decedent got in front. He said he produced an ignition key, a duplicate of his mother's key which he had obtained surreptitiously some months previously, and handed it to one of the two people in the front seat. John Almond testified it was he who took the key and started the engine. According to Roger's testimony, the engine was kept running for 10 or 15 minutes to unlock the power for the heater and radio, but it was turned off before they fell asleep.

Roger admitted he had used his mother's car on several previous occasions without her permission and had driven it around the neighborhood. When driving in the company of his parents he stated he never used his duplicate key. His father testified he had not known of Roger's previous use of the car or of his possession of a key. On the night in question he claimed to have told his daughter "Look, you better tell Roger to take the girls home", but he denied having told Roger to take the car.

Upon all of the evidence, and for the reasons set forth below, the judgment should be reversed as to both defendants and the complaint dismissed.

Plaintiff, quite properly, placed no reliance upon former section 59 of the Vehicle and Traffic Law in seeking to impute the son's alleged negligence to the mother, for that section, which was amended and re-enacted as the present section 388, applied at the time of the decedent's death only to the operation of motor vehicles upon a public highway. Here, there was no evidence that plaintiff's intestate succumbed to the carbon monoxide poisoning anywhere but in a purposely stationary automobile in a private garage. Accordingly, it was incumbent upon plaintiff to prove, under the common law, not only that the automobile was used with Mrs. Parker's permission but also that such use was for her benefit (*Selles* v. *Smith,* 4 N Y 2d 412,

414–415; *Cherwien* v. *Geiter,* 272 N. Y. 165; *Van Blaricom* v. *Dodgson,* 220 N. Y. 111; Restatement, Agency 2d, § 238, especially comment *c*). Assuming the truth of plaintiff's testimony concerning her conversation with defendant Selma Parker, the son was to use the vehicle to transport his companions to their homes. In fact, they used it for another, contrary purpose, namely, as a secluded shelter where they privately pursued their own personal pleasures. Mrs. Parker may not, under such circumstances, be charged with responsibility for any negligence of her son, for he was not then engaged in any activity for her benefit or at her direction (*Chaika* v. *Vandenberg,* 252 N. Y. 101, 106; *Fallon* v. *Swackhamer,* 226 N. Y. 444, 448).

The owner of an automobile may restrict its use to a specified purpose, and, when the operator is engaged in pursuing some other end, the use must be deemed to be without the owner's consent (*Chaika* v. *Vandenberg, supra*). Thus, in the absence of permission to use the automobile for their frolic, the four companions were common adventurers, no one of them having a superior right of control over the automobile nor a greater responsibility for the safety of the others. All had equal knowledge and awareness of the hazards involved in their activities, and all, therefore, had an equal and concurrent duty to avoid exposing the group to an unreasonable risk of harm. Roger Parker, in propping open the garage door, producing an ignition key, and starting the engine, was merely acting on behalf of the others, apparently with their full knowledge and approval, and his actions were thus imputable to the others. Because of their cognizance of the circumstances, it would have made no difference if the other youth or one of the girls had performed the same series of acts, or one of the acts, as testified by defendants' witnesses.

Foresight and comprehension of the danger of carbon monoxide poisoning as well as the capacity to avoid such danger while the automobile was in a stationary position in the garage were shared equally by all. Since none of the four youngsters had assumed greater control of the situation to the exclusion of the others nor reasonably relinquished individual responsibility for the exercise of due care, no one, rather than another, of the youngsters may be charged with liability for the consequences of their joint activities. (*Fried* v. *Korn,* 286 App. Div. 107, affd. 1 N Y 2d 691; cf. *Joyce* v. *Brockett,* 205 App. Div. 770, affd. 237 N. Y. 561.)

Accordingly, the judgment should be reversed, on the law and the facts, and the complaint dismissed, with costs to defendants-appellants.

BREITEL, VALENTE and STEVENS, JJ., concur in *Per Curiam* opinion; BOTEIN, P. J., and BASTOW, J., dissent in part in the following memorandum: We dissent in part and vote to set aside the verdict as to defendant Roger Parker and grant a new trial as to him. We believe a jury could find that while Roger was not given permission to use the automobile for the frolic and detour upon which he and his companions had engaged, he had nevertheless assumed control and direction of the circumstances which resulted in the death of plaintiff's decedent. The case, however, was not tried nor submitted to the jury on this theory alone. We concur in the dismissal of the complaint against Selma Parker.

Judgment reversed, on the law and on the facts, and the complaint dismissed, with costs to defendants-appellants.